# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CONN-SELMER, INC.**
        Plaintiff,

v.                                           Case No. 04C0245

**APEX INDUSTRIES, INC.**
        Defendant.

## ORDER

On March 12, 2004, plaintiff Conn-Selmer, Inc. initiated this action against defendant Apex Industries, Inc. alleging trademark infringement and counterfeiting in violation of the Lanham Act and related claims.[1] Despite being served with process, defendant failed to appear. The Clerk of the Court has entered default against defendant in accordance with Fed. R. Civ. P. 55(a). Plaintiff also filed a motion for default judgment and, despite being served with this motion, defendant has not responded. This order addresses plaintiff's motion.

## I. DISCUSSION

There are two stages in a default proceeding: the entry of the default, and the actual default judgment. In re Catt, 368 F.3d 789, 793 (7th Cir. 2004). Rule 55(a), pertaining to entries of default, provides that: "when a party against whom a judgment for affirmative

---

[1]This action was originally commenced by G. LeBlanc Corporation. As a result of subsequent asset purchase agreements and mergers, Conn-Selmer is now the exclusive owner of the marks at issue here and the rights of recovery for past infringement of these marks. On July 11, 2005, I ordered that Conn-Selmer, Inc. be substituted for G. Leblanc Corporation as the named plaintiff in this case.

relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." In the present case, plaintiff filed an application for entry of default and the Clerk of Court has entered default against defendant in accordance with Rule 55(a).

Upon the entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983). However, allegations regarding the amount of damages must be proven because "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." In re Catt, 368 F.3d at 793. Where damages are liquidated (i.e., capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing. See Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however require "proving up" at an evidentiary hearing or through other means. Id. at 1323-24. Granting or denying default judgment is within this court's sound discretion. Merrill Lynch Mortgage Co. v. Narajan, 908 F.2d 246, 252 (7th Cir. 1990).

In the present case, plaintiff alleges that it is the owner of the registered trademark NORMANDY® for clarinets and NORMANDY & DESIGN® for wind instruments–namely, clarinets, flutes, oboes, English horns, bassoons, piccolos, saxophones, and fifes. For over fifty years, plaintiff has used the NORMANDY mark in interstate commerce throughout the entire United States to identify and distinguish its goods from the products provided by other entities. Additionally, plaintiff has spent and continues to spend money using, advancing, promoting and advertising the NORMANDY mark and the goods sold

2

thereunder and, as a result of such advertising and of the reputation of plaintiff's products, the trademark has attained goodwill among customers. NORMANDY brand products have earned commercial success, recognition, and acceptance.

Plaintiff also alleges that defendant imports musical instruments, including clarinets, from China and India and then sells them through Internet sites such as eBay.com. Defendant has used and continues to used the NORMANDY mark on clarinets without the sponsorship, consent, approval or certification of plaintiff. The counterfeit musical instruments have the same general appearance as plaintiff's clarinets, but are made of inferior materials and are inferior in quality compared to plaintiff's products bearing the NORMANDY trademark. By these actions, defendant has intentionally and willfully counterfeited, infringed, diluted and tarnished the NORMANDY mark, engaged in unfair and deceptive practices, and deliberately traded on plaintiff's goodwill and reputation, to plaintiff's irreparable injury.

These facts sufficiently establish defendant's liability for trademark infringement and counterfeiting in violation of the Lanham Act. Thus, I must now determine the amount of damages.

Under the Lanham Act, once counterfeiting activity has been established, plaintiff is entitled, subject to certain limitations, to recover defendant's profits, any damages sustained by plaintiff, and the costs of the action. 15 U.S.C. § 1117(a). When a court awards damages under § 1117(a), the court must also enter judgment for three times the amount of profits or damages, whichever is greater, unless the court finds that extenuating circumstances exist. A plaintiff may also be entitled to attorney's fees, id. §§ 1117(a), (b), prejudgment interest, id. § 1117(b), and injunctive relief, id. § 1116(a).

A trademark owner may also elect to recover an award of statutory damages, rather than actual damages and profits, for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. See id. § 1117(c); Tony Jones Apparel, Inc. v. Indigo USA LLC, No. 03C0280, 2005 U.S. Dist. LEXIS 14649, at * 25 (N.D. Ill. July 11, 2005). The rationale for the section awarding statutory damages is the practical inability to determine profits or sales made by counterfeiters. See, e.g., Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) (stating that "[s]tatutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain"). In setting an appropriate statutory damages amount, courts are not required to follow any rigid formula and have wide discretion. Tony Jones Apparel, Inc., 2005 U.S. Dist. LEXIS, at * 28.

The present statutory minimum and maximum damages for non-willful infringement are $500 and $100,000 per counterfeit mark per type of goods or services sold . 15 U.S.C. § 1117(c). Additionally, a court may award up to $1,000,000 per counterfeit mark if the infringement was committed wilfully. Id. § 1117(c)(2). Although § 1117(c) "affords plaintiffs the right to pursue statutory damages without proving actual damages . . . the statute does not provide guidelines for courts to use in determining an appropriate award." Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002). Thus, courts have looked to an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), for guidance. See, e.g., Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); see also Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229 (7th Cir. 1991) (explaining that courts may consider factors such as "the difficulty or impossibility of proving damages, the circumstances of the infringement, and the efficacy of the damages as a

4

deterrent to future copyright infringement"). Under the Copyright Act, the following factors are relevant: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." Tiffany, 282 F. Supp. 2d at 125.

Plaintiff asks for statutory damages in the amount of $500,000. This amount consists of the maximum of $100,000 in statutory damages for defendant's sale, offer for sale and/or distribution of clarinets bearing plaintiff's trademark. Moreover, plaintiff asks that the statutory damages be increased to $500,000 pursuant to §1117(c)(2), which allows an award of up to $1,000,000 if the use of the counterfeit mark was willful. After considering the factors that are particularly relevant in the present case, I conclude that this amount is appropriate. Factors two, three and six are not particularly relevant in the present case.

However, with respect to the first factor, plaintiff submits an approximation of the damages in this case which, when trebled, total $404,955. This is approximately the same amount as the requested statutory damages. Moreover, with respect to the fourth and seventh factor, the amount of $500,000 is sufficient to serve as a deterrent on defendant and others and has the potential to discourage defendant from violating the Lanham Act in the future. Finally, with respect to the fifth factor, pursuant to the entry of default and the allegations of the complaint, defendant's conduct is determined to be willful and thus an

5

increased award is appropriate in the present case. Thus, I will award plaintiff $500,000 in damages.

Plaintiff also requests and is entitled to permanent injunctive relief. Title 15 U.S.C. § 1116(a) provides, in relevant part, that "the several courts vested with jurisdiction of civil actions arising under this chapter shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." Plaintiff requests that I enter a permanent injunction

> enjoining and restraining Apex Industries, Inc., its associates, agents, servants, employees, officers, directors, representatives, successors, assigns, attorneys and all persons in active concert or participation with it who learn of the injunction through personal service or otherwise (a) from using the mark NORMANDY, (b) from representing by words or conduct that Apex Industries, Inc. or its products are authorized, sponsored, endorsed, or otherwise connected with Conn-Selmer, Inc. (c) from any conduct which causes, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection or association of Apex Industries, Inc.'s products with Conn-Selmer Inc.; and (d) from unfairly competing with Conn-Sellmer, Inc. in any manner whatsoever.

Plaintiff also requests that I order defendant to "destroy all business cards, invoices, forms, advertisements, promotional materials or any other materials bearing the trademark NORMANDY or any other term infringing on the NORMANDY trademark."

These terms appear reasonable and as such, I will also award plaintiff injunctive relief. See, e.g., Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997) (affirming permanent injunction against using "any counterfeit, copy, or colorable imitations of the trademarks of Plaintiff Levi Strauss & Co. that is likely to cause confusion").

## II. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that plaintiff's motion for default judgment is **GRANTED**.

6

**IT IS FURTHER ORDERED** that the judgment be entered in the amount of $500,000 in favor of plaintiff and against defendant.

**IT IS FURTHER ORDERED** that Apex Industries, Inc., its associates, agents, servants, employees, officers, directors, representatives, successors, assigns, attorneys and all persons in active concert or participation with it who learn of the injunction through personal service or otherwise are permanently enjoined and restrained (a) from using the mark NORMANDY, (b) from representing by words or conduct that Apex Industries, Inc. or its products are authorized, sponsored, endorsed, or otherwise connected with Conn-Selmer, Inc., (c) from any conduct which causes, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection or association of Apex Industries, Inc.'s products with Conn-Selmer Inc.; and (d) from unfairly competing with Conn-Sellmer, Inc. in any manner whatsoever.

**IT IS FURTHER ORDERED** that defendant destroy all business cards, invoices, forms, advertisements, promotional materials or any other materials bearing the trademark NORMANDY or any other term infringing on the NORMANDY trademark.

Dated at Milwaukee, Wisconsin this 20 day of March, 2006.

/s_____
LYNN ADELMAN
District Judge

7